The United States v. Mamek is submitted at this time on the briefs. The first case to be argued then is 02-50539, United States v. Brooks. Each side has ten minutes. Good morning. Good morning. Monica Knox, Deputy Federal Public Defender for Appellant Guy Christopher Brooks. I'm going to reserve two minutes for rebuttal and I'll keep track of my own time. This last Friday evening when I came home from work I went into my 15-year-old son's bedroom to say hi to him. And he was playing video games and behind him the dog was chewing on a red pen. And there was this great big red stain on a $400 wool carpet I had bought two weeks ago for his room. And I yelled. And I pushed the stuff aside and was cleaning up the stain. When I was preparing this case over the weekend it occurred to me that the neighbor might have heard me yell. And Thomas's window faces the front of the room and his curtains were open and it was dark outside and light inside so anyone coming up would have seen inside his room, which was a typical teenager's room. The bed was unmade and there were clothes all over the floor. If an officer had responded to my house because the neighbor had called and said, I heard Malcolada yelling and banging over there, could he have busted into my front door? How about if the neighbor said, I think the mother is beating the son? Well, I think if the neighbor said... Because that's what happened in this case, right? With all due respect, I disagree that that's what happened. What happened is the hotel guest said to the officer that she heard sounds which she perceived to be the sound of a woman being hit. Nobody asked her what that meant. You know, last night when I was preparing this case for argument, I gave the relevant facts to my husband, which included that the hotel guest said she heard sounds that she perceived of a woman being hit. That the officer went to the room and saw a bed unmade and clothes on the floor and that Mr. Brooks said to him, I'm not surprised to see you, she was very loud. My husband immediately assumed they had been having sex. The problem with this, what the officer knew at the time that he went to the door, before he walked in that room, is entirely consistent with many, many other theories. And in fact, it's not really consistent with domestic abuse at all. But the issue is, in order to enter that room... How can you say... It's a question of whether there's probable cause plus exigent circumstances. Correct. I don't know how you can argue that what occurred wasn't consistent with domestic abuse. Well, I... It's very impossible that there's some other innocent explanation. But certainly the adjacent guest thought someone was being beaten and told the police that. Now, isn't that enough for probable cause? Because probable cause generally means more likely than not that there's evidence of a crime there. Putting aside whether there are exigent circumstances, isn't that sufficient? That you have a witness who thinks something's happening behind those doors? The problem, Your Honor, is that nobody asked her what she meant. The statement she made is entirely conclusionary. She said that what she heard was something she perceived to be that. Why isn't that probable cause, though? She doesn't have to be... An affiant gives an affidavit for probable cause normally. It's not even an interview. There's no cross-examination. It's not about cross-examination, Your Honor. I... If she... The problem is it's a conclusionary statement, and we don't know what that means to her. The police are relying on that. It's not the police's conclusionary statement. Right. I agree. The witness's statement. Right. But what we're talking about is what the officer knew. If he had said to her... If an officer knows that a guest adjacent to a room has heard sounds that the guest thinks indicate someone in there is in danger, why isn't that sufficient for probable cause? Is there any case that says... Let me put it a different way. Is there any legal authority in our circuit or any other circuit on those facts where the police have a complaining witness who says, I think someone's being beaten or someone's in danger inside, where a court has said that isn't sufficient? Well, there... Is there a case that says that isn't sufficient for probable cause? There are plenty of cases cited in our reply brief where courts have held that witnesses... that citizens calling and making complaints about things such as verbal fights, glass breaking, police coming up and seeing the window broken after a sign of glass breaking, signs indicative of violence. There are cases that have held that that isn't sufficient. Now, is there a case directly on point where there is a citizen who says she heard sounds that she perceived to be somebody being beaten, not that I found? But certainly there are cases where what the citizen has advised the police is indicative of violence, and the courts have held that that's not enough. And those cases are cited in the reply brief. Did the policeman talk to the witness? The evidence from the hearing shows that the policeman talked to the guest, but that all she said to him, and then he left, was that she heard signs that she perceived to be. But you have the guest's complaint. Yes. The police talking to the guest so that police can at least make a credibility assessment of some sort about the guest, that it's not like an anonymous tip on the phone. Right, but we would assume. Are you and the police seeing some level of disarray in the room when the door is open? Well, when you say some level of disarray, he described it as total disarray. Right, not much, but there's blood on the floor. It's what most hotel rooms look like. I mean, it's not odd. It was a bed unmade and some items of clothing on the floor. That was it. Maybe at some point in your argument you'd want to address exigent circumstances. Yes. Now. Assuming that we conclude there's probable cause to think there's evidence of a crime there, could the policeman enter the room? Okay. If he had reason to believe that an assault had taken place, he had certainly, he had a right and a duty to investigate that. He did not have a right to go in there because there were plenty of ways to resolve the issue of whether this woman had been hurt without walking into that hotel room. He could have asked for her to come to the door. He could have asked for them to walk outside. There were many ways that he could resolve this issue. Instead, he chose to resolve it by walking into the room. Is there any case law that says that if a policeman has probable cause to think someone in a hotel room has beaten their spouse, that they can't just enter, that they're required to ask the spouse to come outside or, you know, ask them to come into the hall? Is there any case that says that? Well, you're, to my knowledge, there's not a case that says directly that. There's certainly. Is there any case that you think is persuasively analogous to that? Well, certainly the United States Supreme Court has said in Mincy v. Arizona that the least intrusive means are to be used to deal with an exigency. So certainly walking into the room isn't the least intrusive means. All he had to do was to see the woman to know that there had not been an assault. And while I want to save the rest of my time for rebuttal, I would also note that once he went in that room, he did resolve that issue. She came out. She repeatedly told him that she had not been hurt. She had never been in danger, was not in danger. He saw no bruises. He saw nothing indicative of anything other than what she told him had happened, which is they were breaking up and she had been crying and fighting about the breaking up. And that was it. And that was all. And yet he didn't leave. Finding no evidence of the crime that he walked into that room to look for, he started fishing for another crime. And so even had there been probable cause and exigent circumstances, the breadth of his stay exceeded the lawful scope of that. I'll save the rest of my time. Thank you. Good morning, Your Honor. Doug McCormick is the United States attorney for the government. Deputy Perez's entry into the hotel room was justified by probable cause and exigent circumstances. Is there any case that you think is squarely on point that says that an adjacent guest complaining of violence in a room gives probable cause to think there's a crime there? Any case, Your Honor? No. However, I think that the facts still meet the legal standard. Deputy Perez had a verified report from a hotel guest in an adjoining room that she had heard what sounded like a domestic assault. And the nature of that report is significant. Whatever that guest heard was significant enough to prompt her to not only call 911, but meet the police in the lobby of the hotel. Once he arrived at the hotel room and knocked, Deputy Perez heard a male voice through the door say, Honey, I think someone is here. And that fact confirmed that a woman was in the room. When the door was opened, Deputy Perez observed that the room was in a disorderly state. Okay, but now I think appellant's got a pretty good argument that a little messiness in a hotel room isn't atypical. I don't disagree with that, Your Honor, but had the room been in pristine condition, defendant would certainly argue that that fact would undermine a conclusion that an assault had taken place. In other words, messiness, disarray, is consistent with an altercation. Could you please address counsel's point that when Perez found the woman, saw her, she was crying, but she said she had not been assaulted. The crime he came to investigate had been solved for all practical purposes. From that point on, wasn't he fishing to see if there was another crime that he could find? I don't think that's true, Your Honor. Deputy Perez is an experienced officer, was an experienced officer, and he testified that in his experience, domestic assault victims frequently deny the fact of an assault when in the presence of their attackers. And common sense tells us why that might be so. If they are left alone at some later point with their attackers, there may be retribution for a report to police. So the fact that Ms. Bengus, the woman, denied an assault was something that Deputy Perez considered, but I think it's also something that he placed very little – he testified that it's something he placed very little emphasis on. And then he was justified in saying, is there anything illegal here? Deputy Perez testified that he asked that question because he was concerned about whether there may be any weapons in the room that one of the parties may use to harm the other party. There was no evidence in the record to suggest that Deputy Perez asked that question for any other purpose. That question was reasonably related to the circumstances that led to him being in that room that justified his entry, which namely was to investigate a possible domestic assault. If I understand correctly, the argument goes exigent circumstances authorized the officer to enter the room. Correct. Then he had the right to chit-chat, to ask questions, to make sure that the female in the room was indeed safe. Correct. And he had the right to ask, do you have anything illegal in the room? He had the right to ask questions that were reasonably related to his purpose. I'm with you there. Then the guy says there's marijuana in the dresser. Correct. What gives him the right to look in the wallet on top of the dresser? He asked the defendant for consent to search for marijuana. Was that it exactly? I thought the guy said there's marijuana in the top drawer or something to that effect, and the cop said, can I go get it? He asked for consent to search for marijuana. What were the exact words? Judge Carter found. The deputy then asked Brooks if he could look for marijuana. Brooks agreed. And Judge Carter cited for that finding, Mr. Brooks's, the defendant's own declaration. That may be the legal conclusion, but wasn't the, isn't my rendition correct? The guy said the marijuana was in the top drawer. He did. And then the officer said, may I go get it? He asked if he could search for marijuana. Search for marijuana or search for it? Marijuana. Do you have the exact quote handy? I suppose my recollection is correct. Deputy Perez asked both Bengus and Brooks if he could search the room for marijuana. You're quoting the judge's finding. I'm quoting now Deputy Perez's testimony, his direct testimony. What did he say? If he could search for, I asked both Brooks and Bengus if I could search the room for marijuana or any other illegal item. Both said yes. Go ahead. Hadn't Mr. Brooks denied having any identification on himself? He had at that point, yes. Before Perez went over to the dresser to look for the marijuana. He had, that's correct. Or he found a wallet. There was a wallet on top of the dresser which Deputy Perez opened and found a California, some sort of identification card, I don't recall if it was California or some other state, that said, that gave his name. At that point the defendant sighed, bowed his head, and then just after that told Deputy Perez that he had absconded from parole in the state of Oregon for bank robbery. At that time Deputy Perez placed the defendant under arrest and the search of the hotel room incident to the arrest followed. And that's when the item that linked the defendant to the three bank robberies was found. Let's go back to the issue, if we could for a moment please, of whether there are exigent circumstances that justify the entry. Assuming there's probable cause, there also have to be exigent circumstances, correct? That is correct, Your Honor. Okay, now how do you, it might at first blush seem that if you accept the guest statement that a woman may be being beaten, that's exigent. But how do you address appellant's argument to the effect that the least intrusive means or way to deal with an exigency has been endorsed by the Supreme Court appellant's data? I haven't looked at that case, but she's basically saying that the police had to call the guest spouse or the couple out into the hall before you could walk in the room. I disagree with the appellant's characterization of the law. I want to go back to some of the facts that I think support Deputy Perez's conclusion that there were exigent circumstances and warranted his entry into the hotel room. First, the defendant, as appellant recited, told Deputy Perez, quote, I knew you were coming, she was very loud. And I think that's a critical fact because it confirms a disturbance. Now, together with the hotel guest report, it was reasonable for Deputy Perez to infer from this statement there may have been an altercation. In addition, the woman, Ms. Bengus, was not present when the defendant opened the door. The defendant said there was a woman in the room in the shower. Again, a woman in the bathroom is consistent with an altercation. It's consistent with a lot of things, isn't it? It is, but it is also, if there had been a domestic assault in the room, it was reasonable for Deputy Perez to infer from the circumstances the woman may have been injured, that she had sequestered herself in the bathroom to recover from those injuries, and or to protect herself from further injury. Well, what about appellant's argument, and I guess I need to look at this Supreme Court case, this least intrusive means argument. First, is there law that requires that? I guess that's my first question, and then I guess second, could that be dealt with by, if that is the law, by calling someone out into the hallway? First, I don't believe that MNC stands for the proposition that the least intrusive means are required. I don't remember the facts of MNC verbatim off the top of my head, but the time that elapsed between the exigency and the actual entry in that case was something like four hours, where in this circumstance, we have something in the matter of a few minutes. Second, had Deputy Perez, Deputy Perez's entry into the hotel room was required to ensure the safety of a possible domestic assault victim. Had he simply remained in the hallway, he would have not had the ability to perceive exactly what happened when Ms. Bengus came out of the bathroom, which was important to determining whether she was safe, secure, and whether an assault had occurred. In light of those circumstances, his entry into the hotel room was reasonable under the circumstances. I see I just have about 30 seconds remaining, so I wanted to make one final point for the Court, which is in the event that the Court disagrees with the government's position, the government still believes that any hair was harmless. And I would point out for the Court the fact that there was, in addition to the numerous eyewitnesses who identified the defendant as the bank robber in the three bank robberies, there were nine trial exhibits consisting of photographs from each of the three robberies. One, I believe it's two from the first robbery, five from the second robbery, and one from the final robbery. Actually, it's three from the first robbery, five from the second, and one from the third. They're bank photographs? They're bank photographs. Surveillance photos? They are photos from the surveillance photos in the camera, and they all show the defendant's head, face, and torso. The photographic evidence, together with the eyewitness testimony, was powerful and persuasive evidence of the defendant's guilt. It was the meat and the potatoes, the items found in the hotel room, were either the cranberry sauce or the gravy. I guess it depends on how you look at it. Thank you. Thank you very much, Mr. McCormick. Looks like you have about a minute left. One wonders why the government fought so hard to get the physical evidence in if it wasn't so important. What's important to realize about the harmless error analysis is the eyewitnesses flip-flopped all of them. The ones that identified him out of a photo spread could not identify him in court. The ones that couldn't identify him in a photo spread identified him in court. That's hardly strong evidence. What about the surveillance photos? Those were not clear photos, and it's the witnesses who identified him who identify him out of the photos, so anything could have happened with that. One wonders what would have been inconsistent with domestic abuse. An unmade bed is consistent with domestic abuse. Clothes on the floor are consistent with domestic abuse. Being in the bathroom is supposed to be consistent with domestic abuse. There would be nothing. Any case where the police have probable cause to enter a location and do so, if it turns out that there's no crime, that they have probable cause, then they're allowed to do that. Except the government isn't arguing that the hotel guest statement alone was probable cause. He's adding this other stuff. But most important, the point I would like to make right now, is that when he asked if there was anything illegal in the room, he did not ask that for weapons. I would refer the Court to ER 31, which is his declaration, and to ER 64 to 66, which is his testimony in court. He was not asking about weapons, and he never said he was. When he went in there, he did the very thing that the government said he should go and do, which is to see her, saw that she was fine, and he still didn't leave. And the idea that he didn't leave because she might have been denying it because he was standing there, there was a second officer in the room by that point. All they had to do was to separate those two people. But the government said that, in the brief at least, that the officer testified expressly that when he asked if there was anything illegal, he had weapons in mind. Is that false, that he didn't testify to that? I'm not going to say that it's false. I don't remember it, and I just looked through as he was arguing, and I can't find it. But I'm not going to say it's false. Is that the citation that you're giving us? His declaration is at ER 31, and his testimony on the issue is at ER 64 to 66. But he did all of those things, and he could have separated them, and he didn't, which shows that he was looking for something else. Thank you, Ms. Knox. The case just argued is submitted. Thank you very much to both counsel. 0250652, United States v. Oropesa. Each side has ten minutes. Morning.
judges: Silverman, Gould, Bea